# IN THE COURT OF APPEALS OF IOWA

No. 22-1501
Filed January 10, 2024

**FREDERICK LAMONT BABINO,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

    The applicant appeals the denial of his third application for postconviction relief. **AFFIRMED.**

    Gregory F. Greiner, West Des Moines, for appellant.

    Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

    Considered by Greer, P.J., Ahlers, J., and Potterfield, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

Frederick Babino appeals the denial of his third application for postconviction relief (PCR) following his convictions for first-degree murder and first-degree robbery in 2000. Babino argues the district court should have granted his application because of newly discovered evidence that one of the jurors in his underlying criminal trial failed to admit knowing Babino's co-defendants,[1] suggesting implicit bias on the part of that juror. The State responds that Babino's application is time-barred because he failed to assert a new ground of fact that could not have been raised within the statute of limitations so we need not reach the merits of his substantive claim.

**I. Background Facts and Proceedings.**

This court previously set forth the underlying facts as follows:

Babino and his friend Shannon Young went to the apartment of Duriel Brown. Present in the apartment were Brown, his sister, Nyeisha Brown-Banks, and Brown's girlfriend, as well as three young children. Babino and Young told Brown they wished to buy an ounce of cocaine. Then they shot Brown twice, once in the arm and once in the head. Brown died.

Babino was arrested several days later in Ohio. He made inculpatory statements to Ohio police and later to Des Moines police.

The State charged Babino with first-degree murder and first-degree robbery. Babino moved to suppress the statements he made after his arrest. The district court declined to suppress the statement to Ohio police but suppressed the statement to the Des Moines police for the purposes of the State's case-in-chief.

At trial, an acquaintance of Babino's, Asia Powell, testified she drove the getaway car. She also testified that Babino attempted to rob another person of drugs earlier that day. A jury convicted Babino of both charges and the court sentenced him to life in prison and a twenty-five year concurrent prison term.

---

[1] The co-defendants were not tried together in a single trial.

*State v. Babino*, No. 00-1980, 2002 WL 570881, at *1 (Iowa Ct. App. Feb. 20, 2002).

An unsuccessful direct appeal and two unsuccessful PCR actions preceded this one, which Babino filed in February 2020—nearly eighteen years after procedendo issued on his direct appeal.[2]

In this third PCR action, Babino asserted he had newly discovered evidence that a juror—who we'll refer to as Juror 2—"failed to answer honestly a material question on voir dire. Specifically that this juror was an in-law relative to at least two participants in" Babino's underlying criminal case.

The State answered, asserting that Babino failed to file his PCR application within the three-year window allowed by the statute of limitations.

The PCR trial took place on November 9, 2021. At the start of the proceedings, Babino's PCR attorney gave the court a summary of the issue. Counsel explained that Babino was alleging that in 2019, he spoke to Shrise Young, who is the sister of Shannon Young and cousin of Joshzetta Wilson—Babino's co-defendants. Shrise told Babino that she knew Juror 2 and had known her for a long time because, in the 1990s, Juror 2 had been in a long-term relationship and had a child with another cousin of Shrise, Shannon, and Joshzetta's—Johnie Johnson. Put more simply, Babino was claiming he only recently learned that one of the jurors in his underlying criminal trial had previously been in a relationship with the cousin of Babino's two co-defendants, because of that relationship the juror knew the two co-defendants, and the juror failed to

---

[2] After a panel of this court affirmed Babino's convictions and sentences on direct appeal, *see Babino*, 2002 WL 570881, at *7, procedendo issued June 3, 2002.

disclose that she knew them during voir dire or otherwise. In giving its own summary, the State responded that because this issue could have been discovered and raised earlier, Babino failed to show his claim fell within an exception to the statute of limitations for PCR actions.

Babino testified that Shrise was "a long-term friend of [his]," with whom he did not communicate between the time of his incarceration and 2019. On cross-examination, the following exchange occurred between the State and Babino:

> Q. Can you tell us more about that conversation, how that came up? A. In generalized conversation reconnecting with each other. We talked about my case, and just out of curiosity, I asked if she knew [Juror 2].
> Q. Why were you curious about that? A. Well, I don't want to presume that all African Americans in Des Moines know each other, but from my experience, most of them do. And so just out of curiosity, I was just curious if she knew her or not.
> Q. Okay. So when you say based on your experience, that's based on your experience living in Des Moines; right? A. Yes. Well, and in prison.
> . . . .
> Q. Okay. You agree with me that you don't know if [Juror 2] had any improper effect on the deliberations in this case; right? A. No, I do not.

Shrise was listed as a witness for Babino, but she failed to participate in the remote proceedings.[3] The district court held the record open and ruled Shrise would be allowed to testify by deposition; Babino was ordered to schedule and take the deposition within thirty days.

Although depositions were scheduled multiple times and Shrise was subpoenaed, she failed to attend. In February 2022, the court held a hearing for

---

[3] At the time, it seemed Shrise appeared and was attempting to participate but experienced technological issues that prevented her from doing so. Because of her later refusal to cooperate, this is suspect.

Shrise to show cause why she should not be held in contempt for her failure to appear for depositions. Shrise again failed to appear, and the district court issued a warrant for Shrise's arrest. At the same hearing, Babino asserted that he had "three or four other family members who ha[d] the same information" about Juror 2's relationship with the co-defendants' cousin; he asked for another trial date to be set to present that evidence or to be allowed to obtain their testimony through deposition. Babino was given another sixty days to take additional depositions.

At the conclusion of those sixty days, Babino filed a written request for more time, stating that he had taken the deposition of Johnie and now "wish[ed] to expand the scope of his discovery." Babino indicated he "need[ed] additional time to interview potential witnesses in this case, including the juror at issue here," Juror 2. The State resisted, and the court heard the motion. At the hearing, Babino asked for an additional sixty days, saying his witnesses were not giving him the information he wanted so he needed an extended window to "kind of. . . pivot from what we originally thought the case was going to be." Babino suggested that Juror 2 was still friendly with family members of the co-defendants and those family members were pressuring Shrise and others not to get involved with Babino's case. He noted he would also be asking for approval for funds to hire a private investigator. The State responded that the discovery phase of the case was over, as the trial on Babino's application was already conducted more than six months earlier—the record was just held open for Babino to submit one witness's testimony. The fact Babino was not getting the evidence he wished for was not, according to the State, a reason to keep the trial going and allow him to search out more individuals. The district court denied Babino's request, recognizing it was

basically a request "to take the case back in time for the investigatory stage," and set a briefing schedule.

In June, Babino made a written offer of proof, asking the court to accept the description of what he would have expected Shrise to say in testimony, which Babino took from his own response to an interrogatory from the State. Babino offered the following:

> [Babino] learned that [Juror 2] was acquainted with the parties in this case when his co-defendant's sister (Shrise Young) reached out to him through her prison ministry, [in approximately] August or September of 2019. As a result, [Babino] has been communicating with her via letters and phone calls. On one call, [Babino] happened to ask her if she knew of this lady [Juror 2], her initial response was "that's my cousin." She clarified that [Juror 2] was married to her cousin [Johnie] Ray Johnson, but they had been divorced for years. She further informed me that [Juror 2] was well acquainted with [Babino's] co-defendant Shannon Young, as [Johnie] Ray is their first cousin and that he was Joshzetta Wilson's fourth cousin; [Babino's] then girlfriend who was also involved in this case. [Juror 2] had known and been married into this family since both Shannon and Joshzetta were young. Shrise later learned after talking with her mother that [Johnie] Ray Johnson and [Juror 2] were not legally married but that they had been in common law marriage for more than 10 years.

Babino also asked the court to reopen the record to include the deposition testimony of Johnie.

The court admitted Johnie's deposition testimony and accepted Babino's claims as to what Shrise's testimony would have been on the family history only—the court concluded any other statements Babino wished to attribute to Shrise did not fall within a hearsay exception for an unavailable witness. The district court concluded Babino's PCR application was not time-barred because Babino had no knowledge of Juror 2's relationship to his co-defendants within the three-year window and, before speaking with Shrise in 2019, "Babino would have had no

reason to investigate [Juror 2] or any other juror." Proceeding to the merits of Babino's claim that he should get a new trial because of the newly discovered evidence of Juror 2's alleged bias, the district court concluded Babino failed to establish his claim. The court seemed to find that Juror 2 was the same person who had a child with Johnie but concluded that Babino failed to prove Juror 2 was aware of the connection to the co-defendants. Also, because voir dire was not reported, there was no evidence whether Juror 2 was asked about her knowledge of the parties, witnesses, or co-defendants—Babino was without evidence Juror 2 actually concealed her limited connection to the co-defendants. Because Juror 2 was, at best, "loosely connected" to the co-defendants, the evidence did not give rise to an implied bias that would warrant a new trial.

Babino appeals.

## II. Standard of Review.

We review the denial of the PCR application for correction of errors at law. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018).

## III. Discussion.

PCR "applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3 (2020). Here, procedendo issued in 2002, and Babino filed this third PCR application in 2020. So unless an exception to the statute of limitations applies, Babino's application is untimely.

There is an exception to the statute of limitations for "a ground of fact or law that could not have been raised within the applicable time period." *Id.* "The onus is on the applicant" asking for PCR outside the statute of limitations to "meet the

'obvious requirement' that he or she could not have raised the ground of fact within the limitations period." *Moon v. State*, 911 N.W.2d 137, 143 (Iowa 2018) (quoting *Harrington v. State*, 659 N.W.2d 509, 515, 520 (Iowa 2003)). The applicant also has the burden to show that "the ground of fact is relevant to the challenged conviction." *Schmidt v. State*, 909 N.W.2d 778, 798 (Iowa 2018) (citation omitted). Within this context, "relevant" means "the type of fact 'that has the potential to qualify as material evidence for purposes of a substantive claim under section 822.2.'" *Id.* (citation omitted).

A fact could have been raised within the limitations period if it was either known to the applicant or it could have been discovered with the exercise of due diligence during the statute-of-limitations window. *Quinn v. State*, 954 N.W.2d 75, 76 (Iowa Ct. App. 2020). Here, the facts Babino alleges as the basis for this PCR action relate to knowledge Juror 2 had at the time of the underlying criminal trial (her connection to the co-defendants) and her state of mind while deliberating; these are not late-developing facts (like a witness recantation may be)—they already existed throughout the three-year window. It is undisputed that information linking Juror 2 and the co-defendants was not known by Babino until 2019. So the question is whether Babino could have, with the exercise of due diligence during the three-year window, learned of the connection. *See Cornell v. State*, 529 N.W.2d 606, 611 (Iowa Ct. App. 1994) ("[O]ur focus of inquiry has always been whether the applicant was or should have been 'alerted' to the potential claim before the limitation period expired.").

The district court concluded that Babino had no reason to investigate Juror 2 or any connection she may have had to the co-defendants until Shrise

mentioned knowing her. Because it was ultimately Babino who, seemingly unprompted, initiated the questions about Juror 2 when talking to Shrise, it seems that he could have asked those same questions earlier in the exercise of due diligence. But we credit Babino's testimony that he was not in contact with Shrise or other members of the co-defendants' family during the statute-of-limitations window. And alleged juror bias is the type of evidence "that has the *potential* to qualify as material evidence for purposes of a substantive claim under section 822.2," *Schmidt*, 909 N.W.2d at 798–99, so like the district court, we conclude Babino's claim falls within the ground-of-fact exception to the statute of limitations.

Because Babino met the procedural threshold, we move on to consider the merits of his substantive claim for relief. *See Harrington*, 659 N.W.2d at 521. To succeed on a PCR claim involving newly discovered evidence, Babino must show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Moon*, 911 N.W.2d at 151.

Here, we skip to the fourth prong, where Babino's claim fails. Following a full evidentiary trial on his application, Babino could not prove the new "facts" he alleged supported his application. Even assuming Babino proved that Juror 2 and the mother of Johnie's child is the same person, he did not prove Juror 2 knew the co-defendants. As the district court recognized, Juror 2 and Johnie ended their relationship by 1986—fourteen years before Babino's criminal trial. Johnie testified Juror 2 would have probably heard him mention Shannon Young's name but, because Shannon was much younger than Johnie, Johnie and Juror 2 had not

spent any time with Shannon. Babino did not prove Juror 2 knew Shannon Young, and he provided no evidence at the PCR trial that Juror 2 had even heard of Joshzetta Wilson. Alternatively, even if Juror 2 knew or recognized the names of the co-defendants at the time of his underlying criminal trial, Babino failed to prove that Juror 2 concealed that knowledge. Voir dire was not reported, so we cannot look back to see what questions were asked. *See* Iowa Code § 822.6A (providing "[t]he underlying trial court record containing the conviction" is "automatically . . . part of the record in a claim for" PCR). And the PCR proceeding was devoid of any testimony or other evidence regarding what questions Juror 2 was asked about her knowledge of others involved with the trial. We will neither assume that the question was asked of Juror 2 or what her response may have been.

While Babino's third PCR application was not time-barred, he failed to establish the underlying facts necessary to suggest implicit bias on the part of Juror 2. Like the district court, we cannot say Babino has shown that a new trial is warranted.

**AFFIRMED.**